**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Anthony Christopher Lewis, | : | Case No. 5:22-00574-MJC |
| | : | |
| Debtor. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| Virginia Commercial Finance, LLC | : | |
| d/b/a Hippo Lending, | : | |
| | : | Adversary Proceeding |
| Plaintiff, | : | No. 5:22-00028-MJC |
| v. | : | |
| | : | |
| Anthony Christopher Lewis, | : | |
| | : | |
| Defendant. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

# O P I N I O N

## I. INTRODUCTION

Before the Court is Debtor/Defendant's motion for summary judgment against Creditor/Plaintiff's adversary complaint objecting to the Debtor's discharge. Plaintiff seeks to deny Defendant a discharge under 11 U.S.C. §§523(a)(2)(A) and (B) and 727(a)(2).[1] Plaintiff alleges, without any apparent actual factual basis and with certain misrepresentations of applicable law, that: (i) pre-petition, Defendant caused Plaintiff to extend a loan for the purchase of equipment for a carpentry/cabinet making business in Texas based upon false and fraudulent representations (§727(a)(2)); and (ii) that despite providing proof of the purchase of the equipment, Plaintiff alleged and continues to allege that Defendant did not purchase the equipment with the loan proceeds (§§523(a)(2)(A) and (B)). Defendant counters these claims by arguing that he (i) did not

---

[1] All code references are to Title 11 under the Bankruptcy Code.

1

make any misrepresentations, and (ii) purchased the equipment for his business consistent with his request for the loan from Plaintiff and provided proof of the purchases along with photographs to Defendant.

For the reasons that follow, the Court concludes there are no issues of material fact, and Plaintiff has not provided any support for its claims objecting to Defendant/Debtor's discharge. Accordingly, Defendant is entitled to summary judgment on his motion.

## II. PROCEDURAL HISTORY

On March 30, 2022, Defendant Anthony Christopher Lewis ("Defendant" or "Debtor") filed his voluntary Chapter 13 Bankruptcy Petition. Debtor converted the case to Chapter 7 on April 13, 2022. Bk Dkt. # 14.[2] On April 14, 2022, Debtor filed his Bankruptcy Schedules, Statement of Financial Affairs ("SOFA") and other supporting documents. Bk Dkt. #s 16 and 17.[3]

The Chapter 7 Trustee conducted the Meeting of Creditors required under §341(a) on June 17, 2022. Bk Dkt. # 29. Initially, the United States Trustee ("UST") filed a Statement and Notice of Presumed Abuse on June 27, 2022, as required by §704(b)(1)(A); however, upon further review, the UST withdrew its Notice determining that the case was not presumed to be an abuse under §707(b)(2). *See* Bk Dkt. # 43. On October 7, 2022, the Chapter 7 Trustee filed her Report of No Distribution indicating that "there is no property available for distribution from the estate over and above that exempted by law." Dkt. # 51.[4]

---

[2] Docket entries in the main bankruptcy case are noted as "Bk Dkt." and all other docket entries refer to this Adversary Proceeding ("Dkt.").

[3] It appears Debtor filed the same papers twice on the Docket.

[4] This means that the Chapter 7 Trustee, after investigating Debtor's financial condition, has determined there are no assets available for distribution to creditors.

On July 5, 2022, Plaintiff Virginia Commercial Finance, LLC d/b/a Hippo Lending ("Plaintiff") filed a Motion for Examination under Rule 2004 of Debtor and also filed a Motion to Extend Time to Object to Discharge. Bk Dkt. # 33 & 34. Debtor opposed the motions; however, Plaintiff subsequently withdrew both motions. *See* Bk Dkt. # 52 & 53.

While the above two (2) matters were pending, Plaintiff timely commenced this adversary proceeding on July 18, 2022.[5] In response to Defendant's motion to dismiss, Plaintiff filed an amended complaint ("Amended Complaint") on September 9, 2022. Dkt. # 9. After Defendant filed his Answer, the Court entered a Scheduling Order setting deadlines for, *inter alia,* the completion of discovery (February 2, 2023) and dispositive motions (March 6, 2023). Dkt. # 14. The parties then exchanged certain discovery and disclosures. *See* Dkt. #s 16-25.[6]

On March 6, 2023, Defendant timely filed a Motion for Summary Judgment ("Motion"), a supporting brief, a Statement of Material Facts, and exhibits. Dkt. # 29. The next day, Plaintiff filed a Motion to Extend and Re-Impose New Pretrial Deadlines and to Stay Motion for Summary Judgment ("Motion to Extend"). Dkt. # 33. Plaintiff sought to reopen and extend the discovery deadlines in this proceeding in order to allow Plaintiff to take the deposition of Defendant.[7] Plaintiff alleged that it learned during the mediation that the LLC had liquidated its assets. Plaintiff argued that Debtor owned the individual assets of the LLC rather than merely an interest in the LLC and thereby liquidated assets of the Bankruptcy Estate. Debtor opposed the Motion to Extend

---

[5] The deadline for objecting to discharge or dischargeability was July 19, 2022.

[6] The parties also requested mediation to resolve the matter. The Court appointed a mediator but ordered that the pretrial deadlines remained in place while mediation was pending. *See* Dkt. # 27. On February 28, 2023, the mediator reported that the parties were unable to resolve the matter. *See* Dkt. # 28.

[7] Plaintiff's counsel apparently chose not to depose Defendant prior to the February 2, 2023 close of discovery.

arguing that Plaintiff should be judicially estopped from asserting that Debtor owns the assets of the LLC and that Plaintiff made the conscious choice to forgo deposing Debtor and that discovery was now closed. *See* Dkt. #s 36 & 39. The Court held a hearing on the Motion to Extend on March 21, 2023 and, after specifically questioning Plaintiff's counsel concerning his representations on the applicable law, took the matter under advisement in order to review the legal precedent Plaintiff's Counsel recited during the hearing.

On March 22, 2023, the Court entered an Order denying Plaintiff's Motion to Extend finding that Plaintiff's counsel, Stephen G. Bresset, Esq., made clear misrepresentations relating to several cases which he specifically represented stood for the proposition that the members of an LLC own the individual assets under Texas law rather than an ownership interest in the LLC itself. *See* Dkt. # 40. The Court further found that Plaintiff's Counsel clearly misrepresented Texas law on this issue.[8]

On March 28, 2023, Plaintiff filed its Response to Defendant's Motion for Summary Judgment, a Brief in Opposition, and an Affidavit of Gordon Murdock, an employee of Plaintiff ("Murdock Affidavit").[9] Dkt. # 41. On April 11, 2023, Defendant filed a Reply Brief and an Affidavit of Debtor in response to the Murdock Affidavit. Dkt. #s 47 and 48. Oral argument was held on April 26, 2023 at which Defendant's counsel appeared, but Plaintiff's counsel did not

---

[8] In fact, as set forth in the March 22nd Order, Texas law is directly contrary to Plaintiff's Counsel's representations. The Texas Business Organization Code specifically provides: "A member of a limited liability company or an assignee of a membership interest in a limited liability company *does not have an interest in any specific property of the company*." Tex. Bus. Orgs. Code Ann. § 101.106(b) (emphasis added). *See* March 22nd Order at 3-4.

[9] Plaintiff also supplied several electronic "WAVE" files of recorded telephone calls between representatives of Plaintiff and Defendant. The Court ordered that the files be transcribed if Plaintiff wished to include them as part of the record. Three of the four telephone calls were transcribed and then filed to the docket. Dkt. #s 42-45.

4

appear or provide any reason or excuse for his non-appearance.   As the matter has been fully briefed, the motion is ripe for the Court's consideration.

## III. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016.   The claims asserted in the Amended Complaint are core proceedings pursuant to 28 U.S.C. §157(b)(2)(A), (I), and (J).   Venue is proper pursuant to 28 U.S.C. §1409(a).

## IV. FACTS

The material facts here are not in dispute.   From the parties' submissions the Court finds the following facts to be relevant:[10]

1.      On or about September 14, 2020, Debtor, as Borrower, borrowed approximately $250,000 from Plaintiff ("Loan").   Dkt. # 29-2 at ¶ 4.

2.      On March 30, 2022, Defendant Anthony Christopher Lewis ("Defendant" or "Debtor") filed his Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code.   The case was converted to one under Chapter 7 on April 13, 2022.   Bk Dkt. # 14.

3.      On April 14, 2022, Debtor filed his Bankruptcy Schedules, Statement of Financial Affairs ("SOFA") and other supporting documents.   Bk Dkt. #s 16 and 17.

---

[10]     Defendant filed a Statement of Material Facts at Dkt. # 29-2, pursuant to L.B.R. 7056-1, incorporating District Court Local Rule 56.1.   Plaintiff indicated in his Response that it was filing a "Counter and Supplemental Statement of Material Facts". Dkt. # 41, ¶ 2.   However, no such document is on the docket, and it appears as though Plaintiff is solely relying upon the Murdock Affidavit.   Pursuant to District Court L.R. 56.1, Defendant's unopposed Material Facts shall be deemed admitted.

5

4.     Debtor's Schedules indicate that Debtor is a physician in Scranton earning $27,499.59 gross income per month and supports his spouse and two (2) minor children. His net monthly income, after payment of expenses, is $3,208.57. *Id.*

5.     Debtor lists on his Schedule B, that he is a 50% member in Lewis Custom Cabinet Company, LLC ("LLC") located in Texas, and which is indicated as a Texas LLC. Bk Dkt. # 17 at 7. The other 50% is owned by his father, who is a carpenter and cabinet maker.

6.     Debtor indicates on his Schedules that the LLC operated out of a rented location, "has equipment-cabinet making equipment" and "because of liabilities and business losses Debtor's interest is guess-estimated at $1,000.00." *Id.*

7.     Debtor lists secured debt of $309,500.00 (mortgage obligation) and $367,132.29 of student loans and $800,798.00 of unsecured debt. Included in the unsecured debt, Debtor lists an obligation to Plaintiff in the amount of $540,000 and indicates it is "a personal business/LLC loan via prom. note and security agreement …" *Id.* at 18.

8.     On May 10, 2022, Plaintiff filed a Proof of Claim # 7-1 indicating a claim balance of $254,380.92 for "money loaned" ("Claim"). The Claim also indicated that it was secured pursuant to a UCC-1 and attached the following documents (collectively referred to herein as the "Loan Documents"):

> i.    UCC-1 Financing Statement identifying Defendant as "Debtor" and Plaintiff as the "Secured Party" and indicating it was filed with the Pennsylvania Department of State on September 17, 2020;
>
> ii.   Promissory Note and Security Agreement evidencing the Loan from Plaintiff to Defendant and executed by Defendant as "Borrower", with a Title as "Sole Proprietor" and dated September 14, 2020 ("Note").[11]

---

[11]   The Note references an amount of $565,041.95 which appears to be the total sum of all the payments due plus interest under the Note.

6

iii.  Guaranty dated September 10, 2020 and signed by Defendant as Sole Proprietor on September 14, 2020.[12]

iv.  Statement of Commercial Purpose signed by Defendant on September 14, 2020.

v.  Guaranty dated September 10, 2020 by Lewis Custom Carpentry  LLC and signed by Defendant as Managing Member on September 14, 2020.

9.  Defendant's father, Anthony Craig Lewis, is an experienced carpenter and kitchen cabinet installer.  Defendant and his father formed the LLC, each having a 50% interest, to launch a cabinet manufacturing business in Texas.  Dkt. # 29-2 at 12-14.

10.  Defendant and his father asked Plaintiff for a loan to finance the LLC's purchase of cabinet making equipment.  *Id.* at 15.

11.  The Loan proceeds were wired into the personal account of Defendant and his spouse.  Loan payments to Plaintiff were paid from this account until the filing of this Bankruptcy case.  *Id.* at 6.

12.  Defendant used the Loan proceeds to purchase the cabinet making equipment ("equipment") and have it delivered and installed at the LLC's facility in Texas.  *Id.* at 23.

13.  Defendant provided Plaintiff with copies of relevant proof of purchase, shipping, and payment records along with pictures of the installed equipment.  *Id.* at 24-28, Exhibits A-D.

14.  The LLC's Tax Returns showed consistent losses of $364,320 in 2020 and $402,783 in 2021.  *Id.* at 32, Exhibits E-F.

15.  The LLC operated out of a rented location, owned no real estate, had liabilities that exceeded its assets, and generated substantial losses.  *Id.* at 37.

16.  Defendant supplemented the LLC's losses from his physician's salary.  *Id.* at 3, 34.

---

[12]  There is nothing in the record as to why Defendant, as "Borrower", would also execute a Guaranty for the same debt.

17.     Defendant disclosed his 50% interest in the LLC in his Schedules.

## V.  LEGAL ANALYSIS

### A.     SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056): "The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *E.g.*, *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017); *Transguard Ins. Co. of Am. Inc., v. Hinchey*, 464 F. Supp. 2d 425, 429 (M.D. Pa. 2006). Thus, the inquiry on a motion for summary judgment is to determine whether there is a disputed issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Hinchey*, 464 F. Supp. 2d at 430. "A dispute of material fact is 'genuine' only if the evidence 'is such that a reasonable jury could return a verdict for the non-moving party.'" *Holbrook v. Jellen*, 2017 WL 4401897, at *4 (M.D. Pa. 2017) (quoting *Anderson*, 477 U.S. at 248).

The moving party has the initial burden to demonstrate "the absence of a genuine issue of material fact." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets this initial burden, then the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). On summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. *United States v. 717 S. Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993).

When, as in this instance, the moving party does not carry the burden of proof at trial, the moving party has the initial burden of showing the absence of a genuine issue of material fact. *In re Roemmele*, 2011 WL 4804833, at *4 (Bankr. E.D. Pa. 2011). The moving party "has no

8

obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323-25).  In this proceeding, Defendant, as the moving party, is required to establish that Plaintiff has not supported one or more elements of its claims under §§727(a)(2) and 523(a)(2) or that the undisputed evidence negates an element under each of the claims.

### B.     THE PARTIES' CONTENTIONS

### 1.     <u>Plaintiff's Claims</u>

Although not clearly set forth in Plaintiff's Amended Complaint, it appears that Plaintiff seeks to (i) deny Defendant a discharge under §727(a)(2), and (ii) except its debt from discharge under §§523(a)(2)(A) and (B).  The claims can be summarized as follows.

### a.     <u>11 U.S.C. § 727(a)(2) Claim – Objection to Discharge</u>

In support of its first claim brought under §727(a), the Amended Complaint asserts, in a conclusory fashion without any clear or specific factual basis:

> 17. That the Plaintiff believes and therefore avers that the Debtor has, with the intent to hinder, delay and/or defraud concealed assets of the estate through, *inter alia*, depressing the value of his assets from the estate and not providing financial information to permit an evaluation of the assets and mislead Virginia.

> 18. That the Plaintiff believes and therefore avers that the Debtor has withheld from examination books, documents, records and papers related to property of the Debtor which includes, but is not limited to, records of the custom cabinet/carpentry business in Nacogdoches, Texas known as Lewis Custom Cabinetry, Lewis Custom Carpentry and Lewis Carpentry, LLC.

> 19. That the Plaintiff believes and therefore avers that the Debtor has failed to satisfactorily explain the valuations placed on assets of the estate which are believed to be depressed below fair market value.

20. That it is believed and therefore averred that the Debtor's actions are willful and intentional.

21. That although representations were made by Lewis as to the use of the funds to purchase equipment for Lewis Custom Cabinetry, Lewis Custom Carpentry and Lewis Carpentry, LLC no proof of delivery of that equipment and/or use of the funds for that purpose were ever made and it is believed that his representations were false and fraudulent.

22. That the representations of Lewis were false, fraudulent and with intent to deceive the Plaintiff and to induce it to extend the requested credit to Lewis.

23. That the Plaintiff reasonably relied on the representations as to the intent of Lewis and the status of the Texas business.

Amended Complaint, Dkt. # 9.

Since Plaintiff did not provide a Statement of Facts and did not respond to Defendant's Facts, Plaintiff's opposition to the Motion seems to rely solely upon the Murdock Affidavit, the Loan documents attached thereto, and the transcribed telephone conversations between Plaintiff and Defendant. The 20 paragraph Murdock Affidavit references some background information relating to the Loan transaction and attaches the Loan documents. Murdock Aff. at ¶¶ 3-8. It goes on to state that Debtor caused the liquidation of the LLC assets without notice to the Chapter 7 Trustee, his creditors, and the Court in May, 2023.[13] *Id.* at ¶ 12. Murdock then states that this "concealment" was a perpetuation of Defendant's fraud "designed to only avoid and evade liability under the commercial loan which he knew or should have known was not viable from the outset." *Id.* at ¶ 19. Plaintiff's Brief (Dkt. # 41-1) does not provide any additional facts to support its claim under §727(a)(2).

In its Brief, Plaintiff argues that Defendant should be denied a discharge (i) because as a result of Defendant covering the losses of the LLC with his personal funds, the LLC's assets

---

[13] Since the Affidavit is dated March 17, 2023, the Court will assume the May date is a mistake. However, there is nothing else in the record as to when the alleged liquidation of the LLC assets occurred.

become property of the Bankruptcy Estate, and (ii) because the LLC sold all or substantially all of its assets before the Bankruptcy case was closed without notice. In support of these claims, Plaintiff argues, for the first time, that Defendant's discharge should be denied under an "alter-ego" or "reverse corporate veil piercing" theory.[14] Unfortunately, this was never pleaded, and Plaintiff does not set forth sufficient facts to support its theories.

### b.    11 U.S.C. § 523(a)(2)(A) and (B) Claim – Exception to Discharge

Plaintiff's second claim is asserted under §523(a)(2) which excepts a debt from discharge where the debt was obtained by fraud and/or misrepresentations. In its Amended Complaint, Plaintiff alleges under its §523(a)(2) claim:

> 25. That it is believed and therefore averred that despite the multiple representations of, by and on behalf of the Debtor there was no evidence that the machinery and equipment which was intended to be purchased and incorporated into the business located in Nacogdoches, Texas were actually purchased and delivered to the company.
>
> 26. That the lack of value as represented by the Debtor in the business is inconsistent with the infusion of approximately $250,000 in capital investment by the Debtor.
>
> 27. That it is believed and therefore averred that the representations of the Debtor as to the equipment, the purchase of equipment, incorporation into the business and the valuation of the business were materially false and intended to mislead, defraud and deceive the Plaintiff.
>
> 28. That the Debtor was, and is, an insider of the business located in Nacogdoches, Texas.

As evident above, the allegations in the Amended Complaint do not identify any specific misrepresentation indicating that the Loan was "obtained" by fraud. Plaintiff relies upon the Murdock Affidavit and the transcribed telephone conversations that Debtor and representatives of the Plaintiff had prior to the Loan being approved in opposition to the Motion. Plaintiff argues

---

[14]    The Court notes that the Murdock Affidavit sets forth no factual basis for either of these theories.

that its non-dischargeability claim is based upon (i) the lack of any evidence that the LLC purchased the equipment (*see* Plaintiff's Brief at 7-8), (ii) that the LLC is an "ongoing business" (*Id.* at 8-9), and (iii) that Defendant failed to satisfactorily explain the valuation of $1,000 for Defendant's 50% ownership of the LLC (*Id.*). Based upon these arguments, Plaintiff opposes the request for Summary Judgment.

## 2. <u>Defendant's Position</u>

Defendant's Motion, supporting Brief, and Statement of Material Facts requests summary judgment in his favor as there is no genuine dispute of any material fact. Defendant's Motion papers set forth <u>undisputed</u> facts that:

a. Defendant, personally, obtained the Loan for the LLC. Def. Statement of Material Facts ¶ 4.

b. The Loan was for the purchase of cabinet making equipment for the LLC. *Id.* at ¶ 15.

c. The LLC was a guarantor for the Loan. *Id.* at ¶ 8; Pl. Exhibits, Dkt. # 41-2.

d. Plaintiff did not obtain a security agreement from the LLC relating to the equipment. *Id.* at ¶ 9.

e. Defendant purchased the equipment needed for the LLC. *See Id.* at ¶¶ 23, 26; Def. Exhibits A – D, Dkt. # 29-3.

f. The LLC operated at a loss. *See* Def. Smt. Mat. Facts ¶¶ 30, 32, 35; Def. Ex. E – F.

g. As a result of the losses, Defendant funded out of his personal physician salary the loan payments to Plaintiff. *See* Def. Smt. Mat. Facts ¶¶ 3, 31, 33; Def. Ex. G.

h. When Defendant could not continue to pay the Loan out of his personal funds, he filed this bankruptcy case. Def. Smt. Mat. Facts ¶ 34.

> i. Defendant listed his 50% ownership interest of the LLC on his Schedules and valued his interest at $1,000 given the substantial losses from operations. Def. Smt. Mat. Facts ¶¶ 37, 42

Defendant maintains that based upon these undisputed facts and Plaintiff's lack of any specific affirmative fraudulent conduct, he should be granted summary judgment and allowed a discharge. Defendant argues that the Murdock Affidavit "does not come forward with any evidence that the equipment was not purchased or utilized as was contemplated" and that "Plaintiff's Brief makes factual assertions and arguments that are not supported in the record." Reply Brief at 9-10.

Defendant argues that Plaintiff relies solely upon the Murdock Affidavit. Although Mr. Murdock claims to be an advisor to Plaintiff's CEO and based upon that position, is "familiar with the commercial loan extended …to Defendant" (Murdock Aff. at ¶ 1-2), Defendant states that "Mr. Murdock's connection to this case is not known or recalled." Affidavit of Defendant, at ¶ 1, Dkt. # 48. Murdock does not provide any other factual background regarding his "personal knowledge" or involvement with the Loan. Likewise, Murdock does not set forth any facts relating to (i) identifying any misrepresentations made by Defendant in obtaining the Loan, or (ii) any attempt by Defendant to transfer or conceal any assets of the Estate in the one year prior to the filing. Murdock does state, in a conclusory fashion, that the LLC's liquidation of its assets while the bankruptcy case was pending was a "perpetuation of fraud and concealment …." Murdock Aff. at ¶ 19.[15]

Further, although Plaintiff argues in his Brief that there is no proof of any purchase of the equipment, Defendant's unopposed Statement of Material Facts indicates the purchase of the

---

[15] Although the LLC is a guarantor of the Loan (Dkt. # 41-3 at 29), there is nothing in the record as to whether Plaintiff has taken any action against the LLC to protect its alleged interest in the LLC's assets.

13

equipment and provided proof of the purchase and pictures. Dkt. # 29-2 at ¶ 23-29, Exhibits A-D.[16] Plaintiff states the business is operating despite Defendant's Answer stating that the LLC has ceased operating (and Plaintiff confirming that the LLC's assets have been sold). *See,* Dkt. # 13 at ¶ 7. Lastly, without any citation to any records, Plaintiff claims that Defendant misrepresented his LLC ownership value. Defendant, however, based the minimal valuation ($1,000.00) upon the LLC's tax and other financial records (that were supplied to Plaintiff). *Id.* at ¶ 19. These records showed substantial losses from operations. The tax returns provided show: 2020 – Form 1065 tax return - loss of $364,320.00; 2021 - Form 1065 tax return - loss of $402,783.00.

In summary, Defendant maintains that Plaintiff's claims must fail since the Loan was not obtained by fraud and no Estate property was transferred or concealed. Based upon these undisputed facts and Plaintiff's failure to allege any specific acts of fraud or misrepresentation, Defendant argues that summary judgment in his favor is appropriate. The Court agrees.

## C. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE 11 U.S.C. §727(a)(2) CLAIM – OBJECTION TO DISCHARGE

Section 727's discharge provision is at the heart of the Bankruptcy Code's fresh start provisions. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977)). Denying a debtor's discharge is an extreme step which is not to be taken lightly. *Rosen*, 996 F.2d at 1531. Consequently, objections to discharge under §727 are liberally construed in favor of debtors. *Id.* Accordingly, "the plaintiff has the burden of proving the objection." Fed. R. Bankr. P. 4005. The objection to discharge must be proven by a preponderance of the evidence. *In re Spitko*, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (citing *In*

---

[16]   It is troubling to the Court that Plaintiff has maintained this false position even though Defendant provided proof of the purchase of the equipment dating back to his Answer to the Amended Complaint. Dkt. # 13 at ¶ 6, Exhibits 1 and 2.

14

*re Adams*, 31 F.3d 389, 393-94 (6th Cir. 1994)).  With this standard in mind, the Court will address Plaintiff's first claim under §727(a)(2).

Section 727(a)(2)(B) relates to claims where the debtor "with intent to hinder, delay, or defraud a creditor … has transferred, removed … or concealed (B) property of the estate, after the date of the filing of the petition."[17]  It is well settled that in order to obtain relief under §727(a)(2)(B), a plaintiff must establish the following four elements: "(1) the debtor committed an act after the date of filing the petition; (2) the debtor committed the act with the intent to defraud a creditor or officer responsible for administration of the estate; (3) the act was one of the debtor or the debtor's authorized agent; and (4) the act consisted of transferring, removing, destroying or concealing any of the debtor's property."  *In re Young*, 576 B.R. 807, 812 (Bankr. E.D. Pa. 2017) (citing *Rosen*, 996 F.2d at 1531 and *In re Singh*, 433 B.R. 139, 160 (Bankr. E.D. Pa. 2010)).  In order to establish the intent required under §727(a)(2), the plaintiff must show that the debtor had an actual, specific intent to hinder, delay, or defraud.  *Id.*  "Courts may base a finding of intent to defraud on circumstantial evidence and inferences drawn from the debtor's course of conduct."  *Id.* (citing *In re Burke,* 523 B.R. 765, 769 (Bankr. E.D. Pa. 2015)).

As set forth above, Plaintiff seems to have abandoned his §727(a) claim as pleaded in its Amended Complaint which was based upon the allegations that Defendant (i) somehow concealed assets of the Bankruptcy Estate by "depressing the value of his assets" and "not providing financial information" to Plaintiff, and (ii) misrepresented the use of the Loan funds as Plaintiff alleges that the LLC did not purchase the equipment.  While still claiming paradoxically that the purchased equipment was not purchased, Plaintiff now pivots to assert in its Brief (for the first time) an alter-

---

[17]    Section 727(a)(2)(A) applies where the conduct complained of was one year before the petition date. Plaintiff has not set forth any facts regarding any pre-petition concealment or transfers of property of Debtor.

15

ego and/or reverse corporate piercing theory.[18]  Covering over 5 pages in its Brief, Plaintiff sets forth legal citations to support these theories.[19]  *See* Pl. Brief at 9-14.  However, Plaintiff fails to cite to any facts that Defendant "with intent to hinder, delay, or defraud a creditor … has transferred, removed … or concealed property of the estate, after the date of the filing of the petition" as required under §727(a)(2)(B).  Plaintiff has wholly failed to show any fraudulent intent on the part of Defendant as required.

Next, the Court will address the element of concealing property of the estate.  Contrary to Plaintiff's position, *i.e.*, that Debtor owns the LLC's assets, the Texas Business Organization Code specifically provides:  "A member of a limited liability company or an assignee of a membership interest in a limited liability company *does not have an interest in any specific property of the company*."  Tex. Bus. Orgs. Code Ann. §101.106(b) (emphasis added); *accord Id.* §101.106(a) ("A membership interest in a limited liability company is personal property."); *RLI Ins. Co. v. Caliente Oil, Inc.*, 469 F. Supp. 3d 729, 740 (W.D. Tex. 2020) ("Texas law recognizes that a limited liability company is a legal entity that is distinct from its members, and members do not have interests in the property of the company."); *In re Cyr*, 602 B.R. 315, 348 (Bankr. W.D. Tex. 2019) (holding under Texas law, debtor had no ownership interest in property owned by an LLC in which debtor had membership interest); *see also Pajooh v. Royal W. Invs. LLC, Series E*, 518 S.W.3d 557, 565 (Tex. App. 2017) ("A membership interest in a limited liability company is analogous to a partnership interest in a partnership insofar as a member has no ownership interest

---

[18]  Because Plaintiff has not met its burden of setting forth the factual elements necessary to prove such theories, the Court will not address Plaintiff's objection to the timeliness of raising this new theory after the bar date for objecting to discharge and without ever pleading such a theory.

[19]  In its Brief, Plaintiff conducts a choice of law analysis regarding alter ego and reverse piercing the corporate veil, and concludes that Texas law applies.  Plaintiff also claims that Texas law probably recognizes reverse piercing.  Since Defendant has not disputed this analysis and for purposes of the Motion, the Court will assume without deciding that Texas law applies and recognizes the theory of reverse piercing.

in any specific property of the company but has a right to receive distributions when they are made.").  Therefore, in order to bring the LLC's equipment into the Bankruptcy Estate, Plaintiff must utilize a reverse piercing or alter ego theory.

"To pierce the corporate veil and impose liability under an alter ego theory of liability … a plaintiff must show: (1) that the persons or entities on whom he seeks to impose liability are alter egos of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose." *Tryco Enterprises, Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App. 2012) (citing *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008)).  The factors in assessing whether persons or entities are alter egos include the following:

- whether the entities shared a common business name, common offices, common employees, or centralized accounting;
- whether one entity paid the wages of the other entity's employees;
- whether one entity's employees rendered services on behalf of the other entity;
- whether one entity made undocumented transfers of funds to the other entity; and,
- whether the allocation of profits and losses between the entities is unclear.

*Id.* at 509.

As to its alter ego argument, Plaintiff does not cite any specific facts to support this theory other than (i) Defendant used his physician salary to prop-up the LLC (which ironically allowed Debtor to make the Loan payments to Plaintiff), (ii) the Loan was made to him personally with the LLC as guarantor, and (iii) Defendant monitored the LLC's finances.  Pl. Brief at 11-12.  The Court concludes that none of these facts equate to an illegitimate purpose.  These facts do suggest, however, that Defendant was making an effort to have the LLC be successful and that he funded a portion of the LLC's operations out of his personal funds.  Accordingly, Plaintiff has not established an alter ego theory.

17

Next, in requesting that there should be a finding of "reverse corporate piercing," Plaintiff, again only in its Brief, argues in a conclusory fashion that the LLC's assets should be declared assets of the Bankruptcy Estate. Plaintiff cites to *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App. 2010) for the proposition that "[u]nder Texas law, veil piercing is generally allowed upon proof of actual fraud for the direct personal benefit of a shareholder based upon a showing of dishonesty of purpose or an intent to deceive." Pl. Brief at 13. Because Plaintiff has not pointed to any facts indicating "dishonesty of purpose or an intent to deceive" or any actual fraudulent conduct, Plaintiff has not established a theory of veil piercing here.[20]

Since Plaintiff's theories of alter ego and reverse piecing are without merit, the Court concludes that the LLC's assets, and in particular the equipment, are not property of Debtor's bankruptcy estate.

At this Summary Judgment phase, the moving party "has no obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." *Nat'l State Bank*, 979 F.2d at 1582 (citing *Celotex*, 477 U.S. at 323-25). Defendant, as the moving party, has established that Plaintiff has not shown (i) any intent to hinder, delay, or defraud by Defendant, and/or (ii) that Defendant transferred, removed, or concealed property of the estate, after the date of the filing of the petition, as required to support an objection to discharge under §727(a)(2).

**D.      DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE 11 U.S.C. §523(a)(2) CLAIM – EXCEPTION TO DISCHARGE**

As the Court has already noted, in dischargeability proceedings, the creditor carries the burden to prove by a preponderance of the evidence that the debt is non-dischargeable. *Grogan v.*

---

[20]  Further, Plaintiff glosses over the fact that it potentially has a direct remedy against the LLC under its Guaranty and can seek damages against the LLC if it believes there was an improper transfer of LLC assets.

*Garner*, 498 U.S. 279, 285 (1991). Plaintiff asserted its second claim under §523(a)(2), which

excepts a debt from discharge:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>
>> (B) use of a statement in writing—
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or an insider's financial condition;
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. §523(a)(2). Instead of asserting two (2) separate causes of action, Plaintiff has lumped

its claims under subsections (A) and (B) into one (1).[21]

As correctly set forth in Defendant's Brief (Dkt. # 29-1 at 5), in order to challenge the

dischargeability of a debt under §523(a)(2)(A), a creditor must establish that:

> (1) the debtor made a false representation; (2) the debtor knew the representation was false when it was made; (3) the debtor intended to deceive the creditor or to induce him to act upon the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained a loss as a proximate result of the representation.

*In re Griffith*, 2014 WL 4385743, at *3 (Bankr. M.D. Pa. 2014); *In re Ritter*, 404 B.R. 811, 822

(Bankr. E.D. Pa. 2009).

Plaintiff's Brief correctly sets forth the elements necessary to except a debt from discharge

under §523(a)(2)(B): (1) statement must be in writing; (2) that is materially false; (3) respecting

---

[21] It's questionable whether Plaintiff actually stated a claim under §523(a)(2)(B) in the Amended Complaint. Plaintiff made no mention of any writing respecting Debtor's financial condition that Plaintiff claimed was materially false and Debtor made with intent to deceive. Because Defendant has not raised this issue, the Court will assume *arguendo* that Plaintiff pleaded a §523(a)(2)(B) count.

19

the debtor's financial condition; (4) upon which the creditor reasonably relied; and (5) with the intent to deceive the creditor. *See* Pl. Brief at 6-7 (citing *In re Cohn*, 54 F.3d 1108,1114 (3d Cir. 1995)).

Unfortunately, Plaintiff completely misses several required elements to establish a claim under §§523(a)(2)(A) and (B). After thoroughly reviewing Plaintiff's Brief, the Murdock Affidavit, and the transcribed telephone conversations between Defendant and Plaintiff's representatives, the Court cannot find <u>any facts</u> alleging that the Loan was "obtained" by false representations or a materially false writing about Debtor's financial condition. Plaintiff refers to the pre-Loan discussions but does not identify <u>any</u> actual misrepresentation as required for a §523(a)(2)(A) claim. Likewise, Plaintiff references "financial projections" and other documents submitted in connection with the Loan but does not identify any document containing a materially false representation respecting Debtor's financial condition as required for a §523(a)(2)(B) claim. *See e.g.*, Murdock Affidavit at ¶ 4.[22]

Further, Plaintiff has failed to establish any "intent" to deceive by Debtor/Defendant. Plaintiff correctly cites to my predecessor Judge Opel's finding that "[u]ltimately, a bankruptcy court may look to the totality of the circumstances, including the recklessness of a debtor's behavior, to infer a debtor's intent to deceive." Pl. Brief at p. 7 (citing *In re Adalian*, 474 B.R. 150, 160 (Bankr. M.D. Pa. 2012)); *Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 305 (11th Cir. 1994) ("A bankruptcy court may look to the totality of the circumstances, including the recklessness of a debtor's behavior, to infer whether a debtor submitted a statement with intent to deceive."); *see also*, *Driggs v. Black, (In re Black),* 787 F.2d 503, 506 (10th Cir. 1986) ("The creditor must establish that a materially false writing was made knowingly with the intent to

---

[22] The Murdock Affidavit at ¶ 4 references that financial projections are attached as Exhibit "A". However, the only attachments are loan documents.

20

Case 5:22-ap-00028-MJC    Doc 52    Filed 09/19/23    Entered 09/19/23 16:43:22    Desc
Main Document    Page 20 of 22

deceive.... However, the requisite intent may be inferred from a sufficiently reckless disregard of the accuracy of the facts."); *Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1167 (6th Cir. 1985) ("The standard ... is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied."). However, again, Plaintiff fails to identify any fraudulent or false representation or writing in connection with obtaining the Loan.[23]

Plaintiff has failed to establish any of the elements necessary to successfully maintain an exception to discharge under §§523(a)(2)(A) and (B). Accordingly, summary judgment shall be granted in favor of Defendant.

---

[23] Ironically, the only misrepresentations evident to the Court are by Plaintiff. In its Brief, despite direct and uncontroverted evidence to the contrary, Plaintiff states:

1. The relevant bankruptcy filings provide no proof that the machinery was ever purchased or delivered to the business. *Id.* at 7.

2. The LLC is an ongoing business and Lewis's interest in both equity and assets of the LLC are property of the estate. *Id.* at 8.

3. The record lacks proof of purchase or delivery of the equipment and led to the inference that the equipment was never purchased. *Id.*

4. Lewis Custom Cabinetry continues to be an ongoing business. *Id.* at 9.

In response to these misrepresentations, the Court notes that prior to even filing an Answer in this adversary action, Defendant provided Plaintiff with proof of the purchase, payments, and pictures of the equipment. Plaintiff has acknowledged the purchase by arguing that this very same equipment was sold improperly. Next, as set forth above, the law is clear that the assets of the LLC are not property of the Bankruptcy Estate. Further, Defendant has consistently maintained that the LLC's business has ceased operating, and Plaintiff has not shown any facts otherwise. Plaintiff's staunch adherence throughout this proceeding to completely opposing positions is troubling to say the least.

21

## VI.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment shall be granted.

An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: September 19, 2023